### In re QUALITY HOLSTEIN LEASING, INC., Debtor.

### Timothy J. VINEYARD, Trustee, Plaintiff,

### v.

### Nathaniel ABEL, et al. (Arrow Electronics, Inc.), Defendant.

**Bankruptcy No. 381–00835 G–11. Adv. No. 383–0800.**

United States Bankruptcy Court,
N.D.Texas,
Dallas Division.

Jan. 15, 1985.

Robert D. Albergotti, Andrew A. Cuomo, Haynes & Boone, Robert Hoffman, Strasburger & Price, Dallas, Tex., for creditors committee.

John Flowers, Wayne Marshall, Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., for Borg-Warner Leasing.

Charles J. Tabb, Carrington, Coleman, Sloman & Blumenthal, Dallas, Tex., for Continental Telephone.

Scotta E. McFarland, Dallas, Tex., for Memphis Aero Corp.

Steven R. Smith, Dallas, Tex., for plaintiff.

Jim D. McLeroy, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

ROBERT C. McGUIRE, Bankruptcy Judge.

The matter was submitted to the Court on the following stipulated facts, and no additional evidence was presented.

On June 16, 1981, Quality Holstein Leasing, Inc. ("QHL") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code as Case No. 381–00835 G–11 in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

On June 24, 1983, Timothy J. Vineyard, Trustee for QHL (the "Trustee"), filed a complaint to recover a preferential transfer against Arrow Electronics, Inc. (the "Defendant").

On March 20, 1981, the Defendant received a check for $8,150 from QHL, which check represented payment made according to ordinary business terms for goods shipped by the Defendant to QHL on February 5, 1981. On March 24, 1981, good funds were made available for the check received by the Defendant on March 20, 1981.

The debt was incurred, and payment was made in the ordinary course of business of the Defendant and QHL.

Plaintiff contends that, as a matter of law, the date that good funds were made available by the drawee bank was the date on which the payment was received, for the purposes of 11 U.S.C. 547(c)(2), which provides as follows:

(c) The trustee may not avoid under this section a transfer—(2) to the extent that such transfer was—(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee; (B) made not later than 45 days after such debt was incurred; (C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and (D) made according to ordinary business terms;

From the stipulated facts, if the date that funds were made available by the drawee bank was the date of payment under § 547(c)(2) of the Code, then the payment was received forty-seven days from the date the obligation to pay arose, and thus falls outside the preferential transfer exception period of said section.

Defendant generally contends that the date of receipt of the check is the date of payment under § 547(c)(2). From the stipulated facts, if the date of receipt of the check is the date of payment for purposes of § 547(c)(2) of the Code, then payment was received within forty-three days from the date the obligation to pay arose, and thus falls within the preferential transfer exception period of said Code provision.

Both parties stipulated that the $8,150 payment made was (1) a payment of a debt incurred in the ordinary course of business

affairs of the debtor and of the transferee; (2) a payment made in the ordinary course of business affairs of the debtor and the transferee; and (3) made according to ordinary business terms. The issue in dispute centers on whether QHL's payment was made "not later than 45 days after such debt was incurred", thereby coming under the statutory exception.

The Defendant asserts that QHL transferred funds to the Defendant within forty-five days after QHL incurred the debt. The Court finds, however, that the transfer did not occur until March 24, 1981, forty-seven days after the debt was incurred, when the Debtor made funds available and the drawee bank was able to honor the check. Because the transfer did not occur until forty-seven days after the debt was incurred, the Defendant is not entitled to the exception provided in § 547(c)(2), and, accordingly, Defendant must return to the Trustee the $8,150 preferential payment that it received from QHL.

11 U.S.C. § 547(e)(1) provides that:

For the purposes of this section—... (B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

Since the funds in the drawee bank could have been garnished by a creditor on a simple contract prior to the honoring of the check by the bank on March 20, 1981, the transfer was not complete for preference purposes until that date. *Fitzpatrick v. Philco Finance Corp.*, 491 F.2d 1288, 1293 (7th Cir.1974); *In re Duffy*, 3 B.R. 263, 265 (Bankr.S.D.N.Y.1980); *Klein v. Tabatchnick*, 610 F.2d 1043, 1049 (2nd Cir.1979); *In re Super Market Distributors Corp.*, 25 B.R. 63, 64–65 (Bankr.D.Mass.1982).

Under Texas law, a check itself does not vest in the payee any title to or interest in the funds held by the drawee bank. Tex. Bus. & Comm.Code Ann. ("UCC"), Art. 3.409 (Vernon Supp.1984–85). For additional cases holding that, for purposes of § 547(c)(2), payment by check does not occur until the check is honored by the drawee bank, see *In the Matter of Advanced Glove Mfg. Co.*, 25 B.R. 521, 524–525 (Bankr.E.D.Mich.1982); *In re Naudin, Inc.*, 32 B.R. 875, 878 (Bankr.E.D.Penn. 1983); *In re Morton Shoe Companies, Inc.*, 36 B.R. 14 (Bankr.D.Mass.1983).

It is noted that the Defendant's position is supported by a decision of the Ninth Circuit which held that the date a check was delivered was the date on which the payment was complete. *Shamrock Gulf Company v. Richcraft, Inc.*, 680 F.2d 645 (9th Cir.1982). See also *O'Neill v. Nestle Libbys P.R., Inc.*, 729 F.2d 35 (1st Cir. 1984); Ellis, *Preferential Payments By Check: At What Point Is Payment Made?*, 16 UCC L.J. 46 (see especially p. 57).

Under the Bankruptcy Amendments and Federal Judgeship Act of 1984, the forty-five day payment limitation has been omitted from § 547, and, therefore, under the facts of the instant case, if they occurred after October 8, 1984, there would be no preference as a matter of law.

In the case of *In re Super Market Distributors Corp., supra* at p. 65, that Court discussed the Ninth Circuit case of *Shamrock Gulf Company v. Richcraft, Inc., supra:*

... In that case [*Shamrock Gulf Company v. Richcraft, Inc., supra*], the court did not analyze § 547(e)(1)(B), but rather relied by analogy on the legislative history relating to when a preference cannot be avoided as a contemporaneous payment.

(P)ayment is considered to be made when the check is delivered for the purposes of Section 547(c)(1) and (2). Report of Senate Judiciary Committee, 124 Cong.Rec. H11,097 (9/28/78); S17,-414 (10/6/78)

The purpose intended is better understood and is consistent with § 547(e)(1)(B) when further legislative history makes clear that the reference is intended to make payment by check capable of being a "contemporaneous exchange".

Normally, a check is a credit transaction. However, for the purposes of (§ 547(c)(1)), a transfer involving a check is considered to be "intended to be contemporaneous...." House Report No. 95–595, 95th Cong., 1st Sess. (1977) 373–374, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6329.

While a check may be considered the equivalent of cash for § 547(c)(1), with all due deference to the *Shamrock* case, the analogy is not required for § 547(c)(2) when the statute provides its own explicit definition of *transfer* as the date of *perfection.* The transfer, which is the starting point for measuring time under § 547(c)(2), would not be complete by statutory definition until the check was cleared since until that time, the bank was an attachable debtor of the debtor and no transfer of funds had occurred. By standard Uniform Commercial Code law and practice, a check is not a transfer of specific funds but merely an unexecuted order to the bank which in no way curtails the debtor's ability to draw on that credit until the bank acknowledges the order by making the payment. *See Klein v. Tabatchnick, supra; In re Duffy, supra;* Mass.Gen.Laws ch. 106, § 3–409.

As indicated, good reason exists for treating a check differently under §§ 547(c)(1) and (c)(2). UCC § 3–503 provides that a check is presented for payment in the normal course of affairs when presented within thirty days. There are clear and fundamental distinctions between §§ 547(c)(1) and (c)(2) that create a reasonable and rational basis for treating a check under the two sections differently.

§ 547(c)(1), by its very nature, requires checks to be treated as cash because the section exception is based on a contemporaneous exchange. § 547(c)(2), on the other hand, is not, by its nature, a contemporaneous transaction. The transaction which is covered by § 547(c)(2) ·is a typical billing cycle, a credit transaction, such as discussed in the instant case.

Defendant questions the comprehensive analysis of legislative history of § 547(c)(2) by the Court in *In the Matter of Advanced Glove Mfg., supra,* contending that legislative history cannot be selectively extracted or, in effect, there cannot be strata of importance of legislative history. Defendant asserts that the following statement by Congressman Edwards and Senator DeConcini ("Edwards/DeConcini Statement") should be given effect, to wit:

Contrary to language contained in the house report, payments of a debt by means of a check is equivalent to a cash payment, unless the check is dishonored. Payment is considered to be made when a check is delivered for purposes of Section 547(c)(1) and (2). 124 Cong.Rec. 34000 (1978) (Statement of Sen. DeConcini); 124 Cong.Rec., 32400 (1978) (Statement of Cong. Edwards).

It appears that the plain wording of § 547(e)(1)(B) and UCC 3–409 militate against any relation back of the transfer from the time of actual payment to the time of tender. *Duke v. Sun Oil Company,* 320 F.2d 853, 861 (5th Cir.1963); *Nicholson v. First Inv. Co.,* 705 F.2d 410, 413 (11th Cir.1983). (*Nicholson* was decided based on §§ 60 and 96 of the Bankruptcy Act).

A judgment will be entered in accordance with the foregoing opinion.