**In re CHASE & SANBORN CORP., Debtor(s).**

**Paul C. NORDBERG, Plaintiff,**

**v.**

**WILCAFE, INC., Defendant.**

**Bankruptcy No. 83–00889–BKC–TCB.**
**Adv. No. 85–0695–BKC–TCB–A.**

United States Bankruptcy Court,
S.D. Florida.

July 25, 1985.

Ronald G. Neiwirth, Gary A. Jones, Miami, Fla., Michael J. Pappone, Boston, Mass., for plaintiff.

James A. Minix, John W. Kozyak, Miami, Fla., for defendant.

Paul Landy, Beiley & Harper, Miami, Fla., for Republic National Bank.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

Plaintiff seeks avoidance of twelve allegedly preferential transfers made to the defendant by the debtor by checks totalling over $2 million in payment for coffee shipped to the debtor on open account. Defendant has answered and the matter was tried on July 18.

By a separate order, defendant's demand for jury trial was denied before trial.

Defendant's motion for continuance of the trial (C.P. No. 12) was also denied. At trial, defendant orally again sought continuance because of the absence of a corporate officer. Counsel had instructed the officer not to attend the trial. This oral motion was also denied after a proffer by counsel of the testimony anticipated from the officer. The testimony would be irrele-vant to a determination of the issues presented.

■ This debtor's bankruptcy case was commenced on May 18, 1983. Therefore, the 90-day statutory preference period began on February 17, 1983. For the purposes of determining whether a preferential transfer was made within the 90 days specified by 11 U.S.C. § 547(b), a payment by check is made when the check is honored by the bank upon which it was drawn. *Nicholson v. First Investment Co.,* 705 F.2d 410, 413 (11th Cir.1983); *Tidwell v. Atlanta Gas Light Co. (In Matter of Georgia Steel, Inc.),* 38 B.R. 829, 834 (Bankr.M.D.Ga.1984). Ten transfers were made by the debtor to the defendant during the 90-day period. Exhibit Nos. 1, 3 through 8, 10, 11 and 12. Plaintiff has carried his burden of establishing each of the five elements specified in § 547(b). These transfers totalled $1,988,714.80.

Plaintiff concedes that defendant gave "new value" to the debtor and, therefore, is entitled to a credit in the amount of $338,-751.64 under the provisions of § 547(c)(4), leaving a net amount of $1,649,963.20 of preferential transfers made to the defendant which are voidable and recoverable by the plaintiff under § 547(b).

The defendant has challenged the sufficiency of the proof offered by the plaintiff on the ground that it constituted inadmissible hearsay evidence. These objections were overruled and do not, I believe, merit further discussion.

■ Defendant has also contended that each of the foregoing payments is excepted from recovery under the provisions of § 547(c)(2). Until this provision was amended by the 1984 Bankruptcy Amendments and Federal Judgeship Act, Public Law 98–353, this subsection provided that:

"The trustee may not avoid under this section a transfer ... (2) to the extent that such transfer was (A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee; (B) made not later than 45 days after such debt was incurred; (C) made in the ordinary course

of business or financial affairs of the debtor and the transferee; and (D) made according to ordinary business terms."

By the 1984 amendment, the 45-day provision was eliminated. However, the 1984 Act specified that the foregoing amendment (and many others):

"shall become effective to *cases* filed 90 days after the date of enactment of this Act." (Emphasis added.) § 553(a).

The 90th day after the date of enactment of the 1984 Act was October 8, 1984. This bankruptcy case was filed a year and a half before that date. Therefore, the 1984 amendment has no application to this adversary proceeding arising in this bankruptcy case.

Defendant has argued that the effective date provision quoted above should be applied as though Congress had specified that the amendment is applicable to "adversary proceedings" filed on or after October 8, 1984 rather than bankruptcy "cases" filed after that date. This argument presupposes that Congress was unaware of the distinct meaning each of these terms has acquired in the bankruptcy law since the 1973 adoption of the bankruptcy rules, which first introduced adversary proceedings. I reject this contention.

It is apparent from a review of the 1984 Act that the two terms are used with precision in many other provisions where the context makes it clear that the terms were intended to have their customary meaning. A similar effective date provision was contained in the Bankruptcy Reform Act of 1978, Pub.L. 95–598 § 403(a), which also employed the word "case" and provided that all matters and proceedings in or relating to any such "case" would be determined under the former Act as if the 1978 amendment had not been enacted. Without dissent, that provision has been applied literally, giving the customary bankruptcy meaning to the term "case". *Nicholson v. First Investment Co.*, 705 F.2d 410, 411 n. 1 (11th Cir.1983). There is no reason to assume less precision in the selection of the same term for the same purpose by Congress six years later. I conclude that the former 45-day provision in § 547(c)(2) is applicable for the purposes of this case and, therefore, this adversary proceeding.

In determining when the "debt was incurred" for the purposes of calculating the 45 days:

"a debt is incurred when the debtor becomes obligated to pay it, not when the creditor chooses to invoice the debtor for his work or goods." *Sandoz v. Fred Wilson Drilling Co., (In Matter of Emerald Oil Co.)*, 695 F.2d 833, 837 (5th Cir.1983).

In this instance, I find that the debtor became obligated to pay when the coffee was shipped.

Defendant argues that the debt was not incurred until the 45th day after the coffee was weighed, because the terms of payment specified by the defendant for its shipments were:

"net cash price due 45 days from weighing." This contention confuses the date payment is due with the date the debtor became obligated to pay. As pointed out by the Fifth Circuit, the creditor cannot be permitted to manipulate the 45-day period by deferring the date of payment.

Alternatively, the defendant has argued that the debt was not incurred until 10 days after the shipment was received by the debtor, because the debtor had the right within that interval to reject the shipment if it did not meet specifications. This clause in the contract merely restricted the debtor's right to claim a breach of contract and did not alter the fact that in each instance involved in this proceeding, it became indebted to the defendant when the coffee was shipped to it.

In calculating the 45-day period, where payment is made by check, I agree with the defendant that payment is made when the check is delivered, if it is subsequently honored, rather than on the day that the check is honored. *Goger v. Cudahy Foods Co. (In re Standard Food Services, Inc.)*, 723 F.2d 820, 821 (11th Cir. 1984); *Tidwell v. Atlanta Gas Light Co. (In Matter of Georgia Steel, Inc.)*, 38 B.R. 829, 834 (Bankr.M.D.Ga.1984).

In each of the ten transfers involved here, the check was received more than 45

days after the date of shipment. Therefore, the exception provided by § 547(c)(2) is not applicable to any of these transfers.

It follows that plaintiff is entitled to recover $1,649,963 from the defendant and, as is required by B.R. 9021(a) a separate judgment will be entered in that amount. Costs may be taxed on motion.